Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                    Chapter 11

    27 Putnam LP, *et al*,[1]                          Case No.  19-13412 (MKV)
                                                        Jointly Administered
                 Debtor.        **LOCAL RULE AFFIDAVIT**

---------------------------------------------------------x
STATE OF NEW YORK      )
                                              ) ss:
COUNTY OF NEW YORK   )

        Evita Lucenko, as authorized signatory of Clinton Hill GP LLC, as general partner of 27 Putnam Ave LP ("27 Putnam"), 423 Grand Ave LP ("423 Grand"), 429 Grand Ave LP ("429 Grand"), and 90 Downing St LP, each a Delaware limited partnership,  ("90 Downing," with 27 Putnam, 423 Grand, 429 Grand and 90 Downing, the "Debtors" and each a "Debtor") deposes and says under penalty of perjury, as follows:

        1.      I am submitting this affidavit under the local rules of this Court in support of each Debtor's chapter 11 filing.

        2.      On October 25 2019, each of the Debtors filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

        3.      Each Debtor owns an adjacent apartment building in the Clinton Hill neighborhood of Brooklyn, as follows: 27 Putnam owns the property located at 27-29 Putnam

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 27 Putnam LP (7503); 90 Downing St LP (7503); 423 Grand Ave LP (7503); and 429 Grand Ave LP (7503).

Avenue, 423 Grand owns the property located at 423-427 Grand Avenue, 429 Grand owns the property located at 429-435 Grand Avenue, and 90 Downing owns the property located at 88-100 Downing Street (collectively, the "Properties").

## BACKGROUND

4. Under prior management, the Properties were mismanaged. Many tenants felt they had been wronged by management, and so they formed a tenants association ("Tenants Association") and brought suit, and the Office of the New York Attorney General ("OAG") launched an investigation into questionable management conduct and practices.

5. While the Debtors and the Properties were under that cloud, DS-CREF3 Clinton Mezz Note Buyer LLC ("Mezz") acquired the mezzanine debt encumbering the equity interests held in the Debtors. By consensual agreement with the equity interests, in lieu of enforcing remedies under its mezzanine debt, an affiliate of Mezz, Clinton Hill Mezz Borrower Lender GP LLC ("New Owner GP"), was admitted as the sole, non-economic general partner of Clinton Hill Mezz Borrower LP, which is the sole owner of the equity interests in Debtors.

6. New Owner GP entered into negotiations with the OAG which led to the execution and delivery of that certain Assurance of Discontinuance, dated as of September 19, 2019, by and among the Debtors and Letitia James, Attorney General of the State of New York (the "OAG Assurance"). New Owner GP and the other respondents did not admit or deny the Findings in the AOG Assurance, but agreed to remedial action. The Debtors filed these cases to implement the settlement, resolve all other claims not included the OAG Assurance, including the tenant association claims, and then to sell the Properties under a Chapter 11 Plan to fund distributions to all parties.

7. The history and resolution of the Debtors' problems was written into the OAG Assurance, and summarized below:

**Debtors' Entry into the New York Real Estate Market**

8. In 2015, East Coast Multi Investor Group, LLC, as general partner ("ECMIG"), formed a joint venture limited partnership with RECAP Clinton Hill Investment, L.P., as a limited partner, and certain other limited partners, to purchase multifamily rental properties in Brooklyn.

9. On or about April 2015, that joint venture purchased the Properties for a combined price of $38 million. The Properties are adjacent pre-World War II residential apartment buildings. Following the purchase, Coastline Apartment Investors, LLC, an affiliate of ECMIG, managed the Properties ("Prior Management").

10. Prior Management's plan was to create vacancies in the portfolio's rent stabilized apartments, renovate the apartments, and then lease up new tenants at a higher annual rent. Since their financing was short term, they had to vacate apartments quickly so they could refinance or sell.

11. The Properties are participants in affordable housing incentive programs—the J-51 real property tax exemptions and abatements program ("J-51") and the federal HOME Investment Partnership Program ("HOME Program"), both administered in the City of New York by the New York City Department of Housing Preservation and Development ("HPD").

12. The Properties' 128 units receive the J-51 tax abatements. J-51 is a tax exemption and abatement that property owners receive from the City of New York by providing owners with an abatement and/or exemption of real property taxes ranging from six to thirty-four

years in exchange for renovating dwellings. The law requires that buildings which receive J-51 tax benefits be subject to rent stabilization for the life of their tax benefit. Here, the J-51 exemption benefits are not set to expire until the end of the taxable year, June 30, 2033. Thus, all units, even those reaching the rent threshold for deregulation under the Rent Stabilization Code, will remain stabilized until at least 2033.

13. In addition, 52 apartments in the Properties were designated federal HOME Program units. Tenants residing in such units must have incomes that are no more than 60% of the HUD-adjusted median family income for the area. In exchange for agreeing to abide by the HOME Program requirements, property owners are offered low interest, long-term loans (funded through federal Community Development Block Grants) to perform major capital improvements to the apartment buildings. The HOME Program's regulatory restrictions expired January 31, 2019, but are subject to retroactive re-implementation by the agency administering the program.

**The Tenants' Complaints**

14. The Tenants Association complained to various City and State agencies, including the OAG, alleging that the Debtors were: making unlawful tenant "buyout" offers; unlawfully entering tenants' apartments; making excessive noise and dust during renovations; interrupting water, heat and sewer services; commencing aggressive and frivolous eviction proceedings against tenants; failing to resolve open HPD violations relating to repairs; creating conditions that were unsafe and unlawful resulting from renovations/construction; and, breaching the terms of the HOME Program and J-51 program. The tenants contended that the pattern of harassment was designed to remove them from the buildings so as to and then allow the owners to renovate and increase rents.

15. The Tenants Association sued in November 2016 captioned *Grand Putnam Tenants Ass'n v. Coastline Apartment Investors, et al.,* Index No. 6531/2016 (Kings Co. Sup. Court).

**The OAG's Investigation**

16. On March 17, 2017, the OAG issued investigatory subpoenas to Coastline Apartment Investors, LLC, Coastline Apartment Investors II, LLC, and non-party Coastline Apartment Investors Sterling.

17. The OAG concluded its investigation and reached its findings by entering into the OAG Assurance. The parties have been complying with its terms.

**OAG Findings and Settlement**

18. The Debtors and New Owner GP (collectively, "Respondents") did not admit nor deny the OAG's findings, but agreed to remedial action.

19. Respondents agreed to a general injunction not to violate the Housing Maintenance Code, the New York City Rent Stabilization Code, or the New York Executive Law.

20. Respondents agreed further to apply to DHCR under 9 NYCRR § 2522.6 (and any DHCR policies and procedures) to determine the legal regulated rent for certain apartments listed in the Assurance, to adjust the rents as ordered by DHCR and to refund all overcharges. Respondents must also provide written notice to each tenant of record residing in the IAI Units of the DHCR proceedings.

21. On open violations under the New York City Housing Maintenance Code ("HMC"), Respondents agreed to perform the work necessary to rectify the condition which led to the issuance of the violations and to request a dismissal inspection with HPD.

22. Respondents also agreed to preserve certain tenants' preferential rents for the entirety of their tenancies.

23. The Assurance provides further that such relief survives the sale of the Properties and shall be included in any Bankruptcy plan, confirmation order, contract of sale/deed transfer or sale order filed in a bankruptcy proceeding.

24. For monetary relief, the Respondents agreed to provide each current tenant in the Properties whose tenancy commenced on or before January 1, 2017, and who maintained continuous residence in the unit, a rent credit of $6,500.00 to be applied to future or past rent as that tenant directs.

## **CHAPTER 11 ADMINISTRATION**

25. The schedule of the 20 largest unsecured creditors is attached to each petition.

26. The schedule of secured creditors is attached to each petition.

27. CREF3 Clinton Mortgage Note Buyer LLC, an affiliate of Mezz and New Owner GP, holds the first mortgage on each Property, which is a "spreader" against all properties, as follows:

| Debtor | Property | Value | Mortgage |
|---|---|---|---|
| 27 Putnam Ave LP | 27-29 Putnam Avenue | $5,560,000 | $29,312,995 |
| 423 Grand Ave LP | 423-427 Grand Avenue | $10,906,000 | $29,312,995 |
| 429 Grand Ave LP | 429-435 Grand Avenue | $8,062,000 | $29,312,995 |
| 90 Downing St LP | 88-100 Downing Street | $10,842,000 | $29,312,995 |

28. Delshah Management, LLC, another affiliate of Mezz and New Owner GP, will manage the Properties post-petition until they are sold. The Debtors jointly employ a Superintendent and 2 Porters. Except for the management fee to be paid to Delshah Management LLC, no insiders shall be compensated for their services during this case.

29. Non-insider general unsecured debt against the Debtors totals $29,580 for 27 Putnam, $41,779 for 423 Grand, $34,698 for 429 Grand and $41,948 for 90 Downing

30. The Debtors shall apply to use cash collateral to maintain the Property and pay debt service. Given the Debtors' obligations under the OAG Assurance, the Debtors anticipate moving for debtor in possession financing.

31. Once the Properties have been stabilized as required under the AOG Assurance, and third-party claims identified, the Debtors' goal is to sell the Properties under a Chapter 11 Plan, pay all parties in full with interest, and make a distribution to equity interests as well.

Dated: New York, New York
November 8, 2019

s/Evita Lucenko, as authorized signatory of Clinton Hill GP LLC, as general partner